UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOILA JUT SARAX DE VASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>Respondents. | Case No. 1:25-cv-1999-JDP<br><br><br>ORDER |

    Zoila Jut Sarax De Vasquez, an asylum applicant who has lived in the United States for the last two years, was arrested and re-detained by ICE. Petitioner seeks immediate release, arguing that her re-detention without a hearing violates the Fourth and Fifth Amendments. She seeks a writ of habeas corpus under 28 U.S.C. § 2241 and has filed a motion for a temporary restraining order. The court finds that petitioner is likely to succeed on the merits of her petition. Therefore, the court converts her motion for a temporary restraining order into a motion for preliminary injunctive relief and grants it.[1]

---

[1] The court previously ordered respondents to address whether they opposed the court converting this motion into one for preliminary injunctive relief. ECF No. 5. In its opposition, the government states that it does not oppose treating the motion for a temporary restraining order as a motion for preliminary injunction. ECF No. 10 at 52.

1

**Background**

Petitioner, a citizen of Guatemala, entered the United States on July 26, 2025, seeking asylum. ECF No. 1 ¶ 2. Upon arrival, federal agents briefly detained her, and, after determining that she was neither a flight risk nor a danger to the community, released her on her own recognizance. *Id.* On October 2, 2024, an immigration court denied petitioner's asylum application; she appealed the decision on November 1, 2024, and the appeal remains pending. *Id.* ¶¶ 3-4.

Since petitioner's entry into the United States, she has attended appointments and check-ins as required by both Immigration and Customs Enforcement ("ICE") and the United States Citizenship and Immigration Services ("USCIS"). Petitioner has not violated any local, state, or federal law; worked in agriculture prior to suffering a work-related injury; and has lived a productive life with her significant other and two children in Lamont, California. *Id.* ¶¶ 8-9. Nevertheless, on November 6, 2025, ICE detained and arrested her during a routine check-in. *Id.* ¶ 5. ICE informed her that she had violated its Intensive Supervision Appearance Program ("ISAP") requirement by failing to properly download specific pictures into the ISAP application.[2] *Id.*

**Procedural History**

On December 24, 2025, petitioner filed a petition for habeas corpus, ECF No. 1, and a motion for a temporary restraining order, ECF No. 3. In her motion, petitioner argues that respondents have violated her Fifth Amendment rights. *See generally* ECF No. 3. On December 24, 2025, the previously assigned district judge ordered respondents to file an opposition to petitioner's temporary restraining order that addressed whether there are any factual or legal issues that render this case distinct from the court's prior orders in *Singh v. Andrews*, No. 1:25-cv-01543-DJC-SCR; *Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK; *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD; or *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP. ECF No. 5.

---

[2] The court understands ISAP to be a smartphone application that is used by ICE to monitor certain non-citizens released from custody. ICE can use the ISAP monitoring application to send non-citizens instructions for reporting for both remote—via either video or still selfie—and in-person check-ins.

2

1 Respondents timely filed an opposition, ECF No. 10, and petitioner filed a reply, ECF No. 12.

2 All parties consented to magistrate judge jurisdiction, and the matter was reassigned to the

3 undersigned on December 29, 2025.  ECF No. 11.

**Legal Standard**

A temporary restraining order, as with any preliminary injunctive relief, is an extraordinary remedy that is not awarded as of right.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The standards governing temporary restraining orders are "substantially similar" to those governing preliminary injunctions.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).  To obtain injunctive relief, petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  Although the court must consider all four *Winter* factors, the first factor—likelihood of success on the merits—is the most important.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

**Analysis**

This order considers whether petitioner has a "fair chance of success on the merits."  *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).  After review of the *Winter* factors, the court finds that petitioner has carried her burden, and a preliminary injunction order will issue.

**I.     Likelihood of Success of the Merits**

Petitioner argues that she is likely to succeed on the merits of her claim that respondents violated her due process rights by re-detaining her without notice and a hearing.[3]  ECF No. 3 at 7-13.  Notably, the government has offered no response to petitioner's due process claim.  Instead, respondents advance an argument premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and was re-detained under 8

---

[3] The petition also includes a Fourth Amendment claim, but since the court finds that petitioner is likely to succeed on the merits of her Fifth Amendment claim, it need not address the Fourth Amendment claim at this time.

3

U.S.C. § 1225(b)(2)(A).  ECF No. 10 at 3.  The government seemingly acknowledges that the primary authority supporting its position—a DHS July guidance document—has been vacated.  *Id.* at 2.  The government does not explain what, if any, alternative grounds support its statutory position.  More fundamentally, the government fails to address how its statutory argument responds to the constitution-based argument raised by petitioner.  Petitioner's argument is, thus, essentially un-opposed.  In addition, the government concedes that there are no factual or legal issues in this case that render it distinct from the orders identified in Judge Calabretta's order, *see* ECF No. 5, and further concedes that the instant case is not substantively distinguishable from *Valencia Zapata v. Kaiser*, No. 25-cv-7492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025).[4]

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  The court considers each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to

---

[4] The court in *Valencia Zapata* found that the petitioners had demonstrated a likelihood of success on the merits of their due process claims because (1) they had demonstrated that upon their initial release, they acquired a liberty interest in their continued release; and (2) their continued detention without written notice and a hearing was violated their right to due process.  *See Valencia Zapata*, 2025 WL 2741654.

work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6.

This court agrees with the bulk of other courts to have considered the issues presented here and holds that petitioner is likely to show that she has a liberty interest in her continued release. Where the government has found that petitioner is not a flight risk or a danger to the community and has released her pursuant to specific conditions, petitioner will likely succeed in showing that she has a liberty interest in continued release.

Immigration officials released petitioner on her own recognizance on July 26, 2023. ECF No. 1 ¶ 2. She has been allowed to live in the United States, subject to ICE supervision, but outside of custody, for over two years. During that time, petitioner has formed "enduring attachments of normal life" while living in the United States; she had been gainfully employed prior to being injured. *See Morrissey*, 408 U.S. at 482. The court finds that petitioner's initial release and time out of custody likely created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from

1  immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-
2  5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released
3  non-citizens to have strong liberty interests).
4      Once a court has found that a non-citizen has a liberty interest in continued release, the
5  court must next determine what procedural protections the government must afford the non-
6  citizen before depriving her of that liberty interest.  This requires balancing the factors laid out in
7  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993
8  (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).
9      The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

14 *Mathews*, 424 U.S. at 335.
15     Here, petitioner has a significant private interest in her continued release.  "Freedom from
16 imprisonment—from government custody, detention, or other forms of physical restraint—lies at
17 the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678,
18 690 (2001).  Petitioner had been released in the United States under the supervision of ICE for
19 over two years prior to her re-detention.  During that time, she applied for asylum and appealed
20 her asylum application's denial, worked in agriculture prior to a work-related injury, and built a
21 life with her significant other and two children.  ECF No. 1 ¶ 9.  *See Salazar v. Casey*, No. 25-cv-
22 2784-JLS (VET), 2025 WL 3063629, at *4 ("Petitioner has an interest in remaining with her
23 family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-
24 1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private
25 interest in remaining free, which developed over the year he resided in the United States.").
26     Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.
27 Petitioner was released on her own recognizance after her initial detention at the border.  By
28 releasing petitioner, immigration officers necessarily determined that she was neither a flight risk

6

1  nor danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's
2  "release from ICE custody after her initial apprehension reflected a determination by the
3  government that she was neither a flight risk nor a danger to the community"). And in the
4  intervening years, there has been no indication that she has become a flight risk or danger to the
5  community. *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the
6  petitioner presented a danger to the community or a flight risk). Absent a pre-detention hearing in
7  front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that
8  petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL
9  3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is
10 justified when a noncitizen presents a risk of flight or danger to the community.") (quoting
11 *Zadvydas*, 533 U.S. at 690)).

12 Respondents do not argue that petitioner is now a danger to public safety or a flight risk;
13 they provide no explanation for her re-detention. *See* ECF No. 10. "Where, as here, '[the
14 petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous
15 deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an
16 opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp.
17 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal.
18 July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural
19 safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no
20 reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's
21 liberty. *See id.*

22 "Third, the Government's interest in detaining Petitioner without notice, reasoning, and a
23 hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no
24 information about the additional burden that would fall on them as a result of being required to
25 provide additional procedural safeguards.

26 On balance, an initial weighing of the *Mathews* factors strongly indicates that petitioner
27 was entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner
28 has demonstrated that she is likely to succeed on the merits of her Fifth Amendment Due Process

claim.

## II. Irreparable Harm

The court finds that petitioner has shown that she will suffer irreparable harm absent a preliminary injunction order. The Court of Appeals has recognized that anyone subject to immigration detention is exposed to irreparable harms. *See Hernandez*, 872 F.3d at 995 ("The briefs of amici curiae highlight in more concrete terms the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)."); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

## III. Balance of Equities and the Public Interest

Where the government is a party, the last two *Winter* factors are considered together. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These factors weigh in favor of petitioner. First, the Court of Appeals has stated that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). Second, the government has not shown that, if petitioner were released, she would pose a danger to the community or a flight risk.

## IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the "court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the court will not require petitioner to provide security.

**Conclusion**

Based on the foregoing, the court finds that petitioner is likely to succeed on the merits of her Fifth Amendment Due Process claim. Respondents likely violated her due process rights by re-detaining her without first having conducted a pre-deprivation hearing before a neutral adjudicator to consider whether she is a flight risk or danger to the community. The preliminary injunction order will issue. If respondents seek to re-detain petitioner, they must first provide her with written notice and a hearing before a neutral adjudicator. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have her counsel present.

Accordingly, it is hereby ORDERED that:

1. Petitioner's motion for temporary restraining order, ECF No. 3, is converted to a motion for preliminary injunction and is GRANTED.

2. Respondents are ordered to immediately release petitioner from their custody under conditions no stricter than those to which she was subject to prior to her November 6, 2025 detention.

3. Respondents are enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator.

IT IS SO ORDERED.

Dated:   January 5, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE